Allen, J.
 

 The Public Utilities Commission denied the application for a certificate of public convenience and necessity as to route No. 1 upon the ground that the record disclosed no substantial difference in the transportation facilities serving the territory in question than existed at the time of the decision of the Supreme Court in
 
 Cincinnati Traction Company
 
 v.
 
 Public Utilities Commission,
 
 112 Ohio St., 699,
 
 148
 
 N. E., 924. In the case of
 
 Cincinnati Traction Company
 
 v.
 
 Public Utilities Commission,
 
 which was an application for a certificate to operate a passenger bus service, the record showed that the route in question was already given passenger service by two other motor-bus lines, with through service by an interurban railroad, and by two steam railroads, furnishing numerous trains and commuting service. It was held in that case that in order to justify the issuance of the certificate it must appear as a reasonable conclusion from the evidence that such transportation companies were not rendering adequate and convenient service for the territory involved, and the order granting a certificate to a motorbus company authorizing it to do local passenger service was therefore reversed.
 

 
 *107
 
 The instant case differs from the
 
 Cincinnati Traction Company case,
 
 however, in certain marked particulars. While it is true that the greater part of the freight route No. 1 applied for, from Cincinnati to Miami Fort, follows the line of the passenger route for which the application was granted, and, after reversal, denied in the
 
 Cincinnati Traction case,
 
 it is also true that that portion of the route at the western end between Cleves and Miami Fort, aggregating some 4.8 miles in length, does not parallel, nor coincide with, the route covered in the
 
 Cincinnati Traction case.
 
 At Cleves, the Big Four Railroad and the Cincinnati, Lawrenceburg & Aurora Traction Company diverge to the north, passing through Elizabethtown; the Baltimore
 
 &
 
 Ohio Railroad alone turns south, passing through Miami Fort. The record contains certain freight schedules of the railroads in question, but the railroads do not appear to protest the granting of the certificate upon route No. 1 — that is, upon the route denied the applicant. The traction company is the only protestant, but since the traction company diverges to the north at Cleves, there is no traction service whatever between Cleves and Miami Fort, and as its eastern terminus is at Anderson’s ferry, the traction does not proceed into the heart of Cincinnati.
 

 Another marked distinction between the
 
 Cincinnati Traction case
 
 and the instant case lies in the fact that in the
 
 Cincinnati Traction case
 
 there was no testimony whatever in the record tending to establish the necessity for the service in question. In this record, on the contrary, there is the testimony of numerous business men from Cleves,
 
 *108
 
 Addyston, and North Bend, and there are petitions signed by numerous citizens asking for the continuance of the freight service. It is the testimony of these business men that the traction company could not give the freight service offered by the truck owner even if its line continued to Miami Fort, for the traction company only runs to Anderson’s ferry, which is some six miles from the heart of Cincinnati. Hence, for carrying freight upon the interurban from Cleves into Cincinnati, or from Cincinnati to Cleves, a separate delivery from or into Cincinnati by truck to or from Anderson’s ferry would be necessary. For delivery at Miami Fort from the traction there would have to be additional unloading from the traction at Cleves, and trucking from Cleves to Miami Fort. It is the uncontradicted testimony of the business men at Cleves, Addyston, and North Bend that if this certificate upon route No. 1 is not granted they will have to maintain trucking service of their own; that they cannot use the traction line which runs from Anderson’s ferry to Cleves in their freight business. Moreover, there is no testimony to the effect that the freight service of either railroad or of the traction will be deranged if the applicant is permitted to continue its operation. This is particularly significant in view of the fact that this freight truck operation has been in existence, although part of the time under a different ownership, since January, 1920. At the hearing before the commission, the traction company put on no witnesses whatever as to freight service. It offered its schedules and the schedules of the railroad lines, but otherwise it only participated
 
 *109
 
 in the hearing by cross-examining the witnesses of the applicant. The record shows that no loading platform exists for freight service by the traction company except that at North Bend and at Anderson’s ferry, and does not disclose that any substantial freight service is done by the traction company between Cincinnati, North Bend, Addyston, Cleves, and Miami Fort. In other words, in the
 
 Cincinnati Traction case, sn,pra,
 
 the proposed passenger route involved an additional passenger service in active competition with existing bus, railroad, and electric lines, while this proposed route No. 1 involves no additional substantial freight competition with the existing steam and electric lines, partly because they do not serve the same territory, and partly because no competition in service is shown.
 

 The commission granted route No. 2, part of which was served by the Cincinnati, Lawrenceburg & Aurora Traction Company and by the Big Foiir Bailroad. It denied route No. 1, in which the railroads did not protest the application. Obviously the existence of passenger service upon this particular route, which in the
 
 Cincinnati Traction Company case, supra,
 
 was the ground for the denial of additional passenger service, while it is a circumstance to be considered in connection with the use of the highway, is not a completely determining factor for the purpose of deciding whether a freight service shall be allowed upon a route where the steam railroads apparently are unconcerned as to the competition, and the only protesting applicant, as shown by the record, does not render the service desired.
 

 
 *110
 
 Where a motor transportation company applies for a certificate of public convenience and necessity to transport freight in a territory where the record shows necessity for such service, and shows that the protesting common carrier is not adequately rendering such freight service, and where, so far as the record shows, the route in question can be granted without in any way deranging the freight business of the common carriers operating wdthin such territory, it is the duty of the Public Utilities •Commission to grant such application for the territory in question. That part of the order denying route No. 1 will therefore be reversed.
 

 Order reversed m part.
 

 Marshall, C. J., Day, Kinkade, Jones and Matthias, JJ., concur.